JOHN PAINE *v.* BENJAMIN W. BONNEY and WILLIAM A. HARDENBROOK.

The eleventh section of the act of 1851, "for the better security of mechanics and others," provides, that the lien may be discharged in either of several modes, and among others, "by an entry of the clerk, made in the book of liens, after one year has elapsed since the filing of the claim, stating that no notice has been given to him of legal steps to enforce the lien."

And the twelfth section of the act provides that the lien "shall continue until the expiration of one year from the creation thereof, and until judgment rendered in any proceedings for the enforcement thereof."

Hence, where proceedings to enforce the lien are not commenced within a year after the creation thereof, the lien expires; and it then becomes the duty of the clerk to make the entry above mentioned, in order that the docket may be cleared.

And *it seems*, that the clerk would be compelled, by *mandamus*, to make the entry, upon his refusal to do so after becoming apprised that no proceedings to enforce the lien had been taken within the year.

Where, however, proceedings to enforce are actually instituted within the year, a failure to give notice thereof to the clerk until after that period, will not, of itself, invalidate the lien, nor impeach the validity of a judgment thereafter entered in pursuance of such proceedings.

A failure to notify the clerk within the year does not, necessarily, entitle the owner, or a person claiming under him, to have an entry made discharging the lien, in case proceedings to enforce have been duly instituted.

On the contrary, notwithstanding such failure of notice, the proceedings so commenced may, ordinarily, be continued to judgment.

It is proper for the clerk, at his option, in the exercise of his official discretion, when applied to to make the entry, to require an affidavit that the latter has not received, within the year, a notice of proceedings to enforce the lien.

Paine *v.* Bonney.

Where the clerk has no notice, and is not apprised of any proceedings to enforce the lien, he may, on the expiration of a year after the claim was filed, make the entry of his own motion.

In doing so, he is bound, however, to act with great precaution.

Whether the court, in any case, could relieve the claimant from the effect of such entry and restore the lien, where proceedings to enforce had, in fact, been duly instituted?    *Quere.*

*It seems,* that in any event, after such entry, the court would not interfere as against an innocent purchaser, who had acted in reliance upon the entry, as proof that the lien was discharged.

The statute does not prescribe the terms or manner wherein the notice in question is to be given to the clerk.

The giving of such notice is not essential to the validity of the proceedings to enforce the lien.

Its only object is to prevent the clerk from making the entry, and thereby prematurely discharging the lien.

A claimant, in pursuance of a contract with the owner or with his contractor, having furnished labor or materials to several buildings standing upon contiguous lots, may effect and enforce one general lien therefor, upon all the said buildings and lots.

Where incumbrances exist upon several parcels of land which have passed to several owners, the court, in the exercise of equity powers, may sometimes apportion the burden.

And *it seems,* that in a proper case, with the necessary parties before the court, a judgment, upon the foreclosure of a mechanic's lien, might be adjusted so as to equalize the burden among separate grantees of different lots, to any extent consistent with a due enforcement of the claim.

But where a grantee purchased three of six lots, knowing the existence of a mechanic's lien upon all, and afterwards conveyed to third persons two of the three so purchased; *held,* that he was not entitled to relief in a suit instituted by him alone, without uniting such third persons, either as plaintiffs or defendants, and in which suit he asks, simply on his own behalf, that his house and lot, upon payment of the value of the materials, separately appropriated thereto, may be released from the effect of the lien judgment.

So held where it appeared that such grantee purchased the three lots at a foreclosure sale of a mortgage, owned in fact by him, and foreclosed for his benefit, in a suit wherein the claimant, under the mechanic's lien, who was a subsequent incumbrancer, was not made a party nor allowed any opportunity, by notice or otherwise, to claim the surplus arising, after satisfying the mortgage debt.

Under such circumstances, the claimant, under the mechanic's lien, having proceeded to judgment, pursuant to the statute, the court will *not impair his* security by limiting the operation of the judgment, or exempting therefrom any portion of the premises to which the lien attached.

Such an interposition by the court would be justified, if at all, only in a case involving a high degree of equity on the part of the plaintiff.

Paine *v.* Bonney.

A judgment, under this statute, relates back to, and takes effect as an incumbrance at the time when the claim was filed.

The act was designed to render the proceeding to effect and enforce a lien simple, and accompanied with as little detail as may be consistent with protection to the rights of those affected by the incumbrance.

If a creditor holds two securities, one upon several parcels of land, and the other upon one parcel thereof only, and the latter is sold; he may apply the proceeds of such sale toward the extinguishment of the lien held upon that parcel alone, although the other security may have been first created.

SPECIAL TERM, FEBRUARY, 1858
Before DALY, FIRST J.

THE prayer of the complaint, in this suit, was addressed to the equitable jurisdiction of the court, and its object was to clear the title to a house and lot purchased by the plaintiff at a sale under the foreclosure of a mortgage. The defendant, Benjamin W. Bonney, was the assignee and holder of a judgment, obtained by one William H. Colwell, in a proceeding to enforce a mechanic's lien upon the house and lot in question, and upon premises adjoining thereto. The defendant, William A. Hardenbrook, was the original owner of all the property included under the lien, and gave the mortgage under which the foreclosure sale took place.

The three persons above mentioned, namely, John Paine, the plaintiff, and Bonney and Hardenbrook, the defendants, were the only parties included in the suit.

At the trial the following statement of facts, in writing, was agreed upon and produced to the court:

" In August, 1855, William A. Hardenbrook owned in fee six lots of ground, lying together and forming one piece of land, seventy-five feet wide and one hundred and ninety-seven feet, six inches long ; bounded northerly by 36th street, southerly by 35th street, and westerly by a line parallel to the 5th avenue, and distant one hundred and twenty-five feet therefrom.

" At that time, Hardenbrook executed to Daniel Paine three mortgages, each of them for $2,000, and one on each of the three 35th street lots, each twenty-five feet wide and ninety-eight feet, nine inches deep. The mortgages were executed for

moneys due to the plaintiff, John Paine, and at his instance and for his benefit were executed to Daniel Paine.

"In the year 1855, Hardenbrook was building upon the said land six dwelling houses, three fronting on 35th street, and three fronting on 36th street, each three houses forming one block of buildings, comprised within four walls, having partition walls within them, dividing them into dwellings and apartments, and all being owned by one person, the said Hardenbrook.

"Within three months prior to the 20th of December, 1855, Hardenbrook purchased of William H. Colwell timber and lumber, which were used in the building, constructing and finishing of the said houses and their appurtenances, the outbuildings and division fences upon the said land.

"On the 20th of December, 1855, the said William H. Colwell, in pursuance of the provisions of the act passed July 11, 1851, being chapter 513 of the acts of the legislature of the state of New York of the year 1851, and the acts amending the same, filed in the office of the clerk of the city and county of New York a notice of claim against Hardenbrook, upon the said buildings and the said land, for the said materials furnished by him, amounting to the sum of $1,413 98.

"On the 20th of March, 1856, said Colwell commenced an action in this court against the said Hardenbrook, to foreclose the said lien, and recovered judgment therein on the 16th day of February, 1857, for the sum of $1,628 99, damages and costs; and for the sale of the right, title and interest which the said Hardenbrook had in the said land and buildings on the said 20th of December, 1855, for the payment thereof.

"Some of the said materials were used in building each of the said houses and its appurtenances, and much more of the materials were used in the 36th street houses than in the 35th street houses; but said Colwell did not know, and these parties do not know, what proportion of said materials was used in any or either of the said houses.

VOL. IV. 47

" In August, 1856, Daniel Paine commenced actions in the Supreme Court to foreclose each of his said mortgages on the 35th street houses and lots, three actions in all; and at the sale under each judgment in October, 1856, the plaintiff became the purchaser of the mortgaged premises, and is now seized of the easternmost house and lot on 35th street.

" Said Colwell was not made a party to such actions of foreclosure by the said Daniel Paine, but Lillie Ann Hardenbrook, to whom said William A. Hardenbrook had conveyed said premises on the 12th of January, 1856, and also the said William A. Hardenbrook, were made parties thereto.

" The plaintiff knew of the existence of such notice of lien of said Colwell before completing his purchase, which was completed after the 18th day of November, 1856. On the 18th day of November, 1856, the attorney of record for the said Daniel Paine, in the said foreclosure suits, who is also the attorney for the plaintiff herein, was particularly informed of the said notice of lien and claim of the said Colwell.

" After the expiration of one year from the said 20th of December, 1855, and in the year 1857, and before the commencement of this action, notice was given to the clerk of the city and county of New York of the legal steps to enforce said lien of the said Colwell.

" No entry was ever made by the clerk of the city and county of New York after one year had elapsed, after the filing of the said claim of the said Colwell, stating that no notice had been given to him of legal steps to enforce the lien.

" The said lien was never in any way discharged by the said county clerk, pursuant to any provision of the act of July 11th, 1851, chapter 513.

" Before the commencement of this action, the said county clerk had noted in his said lien book an entry of having received such notice of legal steps to enforce such lien, and which notice had then been served on him.

" The lot and premises situated on the southerly side of 36th street, in the city of New York, beginning at a point distant one hundred and seventy-five feet easterly from the 5th ave-

Paine *v.* Bonney.

nue, and being twenty-five feet wide and ninety-three feet nine inches deep, were sold under a judgment of the Supreme Court for the foreclosure of a mortgage, and produced at such sale $4,912 12, after satisfying said judgment.

" At a reference in relation to liens. upon said surplus, the defendant, Bonney, the assignee of the judgment of the said Colwell, attended, but did not present any claim to such surplus, or any part thereof, under the said Colwell judgment; but did present and insist upon another lien against said surplus, and which was allowed. The lien of the said Colwell judgment was prior to that so insisted upon by said defendant, Bonney, and allowed to him, and the latter covered the whole amount of the said surplus.

" Since the purchase aforesaid by the plaintiff, other parties have become interested as owners of some of the said dwelling houses and lots, both on 35th and 36th streets, other than those in which the said plaintiff and the defendant, Bonney, are interested ; and those parties became so interested before the commencement of this action."

The prayer of the complaint was, that " the judgment (obtained in the lien proceedings by Colwell, and assigned by him to the defendant, Bonney) be vacated, on the ground that the said Colwell had no lien upon the said three houses and lots in Thirty-fifth street at the time the notice of claim was filed, nor upon either of them, or has since lost it; or that the said judgment, and all proceedings subsequent to the service of the complaint, be set aside or modified, so that the plaintiff may be allowed to defend, and to show to what extent the said Colwell had a lien (if any) upon the said easternmost building and lot on Thirty-fifth street ; and that the lien upon the said easternmost building and lot, or any judgment thereon, be discharged upon payment by the plaintiff of the amount of materials furnished by said Colwell upon the house upon the said easternmost lot mentioned in the complaint; or for an examination before the court, or a referee appointed by the court, as to the amount of materials furnished by said

Colwell upon the house upon the plaintiff's lot; and that a perpetual injunction be granted against the enforcement of the said judgment against the said building and lot, upon payment of their proportion of said materials furnished, or for such other or further relief as to the court shall seem just."

In January, 1858, the plaintiff, upon the complaint and affidavits, moved for an order of injunction, *pendente lite.* The motion was heard before HILTON, J. It was opposed by affidavits on the part of the defendant, Bonney, and the application was disposed of in the following opinion:

HILTON, J.—The plaintiff having purchased, with notice of the lien of Colwell, should be presumed, upon this motion, to have accepted his conveyance of the premises in question, subject thereto. And whether the lien or the judgment thereupon is valid or invalid, no case is presented entitling the plaintiff to the restraint asked for.

The motion for a temporary injunction was denied.

The cause was afterwards moved on for trial, at a special term, before DALY, FIRST J., without a jury.

*Wm. C. R. English* and *Augustus W. Classon,* for the plaintiff, argued mainly as follows:

" Materials furnished to a building under a contract to furnish them to such building, and used on it, give a right of lien for their price on the specific building and lot on which such materials are used. Thus, no difficulty can arise. The material man knows precisely what he supplies, and to what he supplies it, because the statute exacts a specific contract for specific materials upon a specific building.

"A lumber merchant, who sells generally lumber to a builder for houses building, has no right of lien.

" There can be no doubt of the meaning of the word ' lot.' It is that ground upon which a building stands, and which would answer the ordinary phrase, ' building and lot.' The Academy of Music is ' a building ;' the fourteen city lots are its ' lot.' But in this case there can be no dispute as to the

meaning of lot. The notice of lien specifies six buildings and six lots.

" Certain proceedings are necessary to preserve vitality in a lien after one year. 1st. Proceedings to enforce it ; 2d. Notice to the clerk of those proceedings. If both are done, the lien continues after the year till judgment. Here notice to the clerk was omitted ; then the lien was dead. It is urged that no entry of non-notice was made by the clerk, therefore the lien survived. But the entry is a ministerial duty ; it is the record only of the death. The death of the lien arises from the fact of non-notice. To hold otherwise, would vest the clerk with the control of a statutory limitation, and subject rights to his volition or negligence. It is urged that the statute nowhere directs the notice of legal steps, &c., to be given to the clerk. It does by construction, through which the statute alone has been made practical. Either such is the meaning of the clause, or it has none. It is urged that the clerk requires an affidavit from the owner of non-commencement of proceedings. If so, he asks what he has no authority to ask. The statute appeals to his knowledge, not to the information he may get from others.

" Waiving all objections to the right of lien, the lien and all claim of its cessation, the plaintiff occupies the position of purchaser from Hardenbrook, with actual knowledge of the existence of the lien filed. He is chargeable, then, with all the burthen of the materials used on his house. He is entitled to all rights which any laches of the lien holder give. He has not been negligent. He knew nothing of the proceedings to foreclose the lien, and must wait a notice of the judgment before applying to a court of equity to relieve him from its effect, or to apportion its burthen.

" A court of equity will always apportion a lien. If parties must be added, the plaintiff should be protected from the execution pending the settlement of rights."

*Edgar Ketchum*, for the defendant, Bonney, made and argued the following points :

FIRST POINT.—The object of the mechanics' lien law of 1851 is to secure payment to mechanics and material men for their work and materials put into buildings in the city of New York. The person " shall have a lien for the value of such labor and materials upon such house or building, and appurtenances, and upon the lot of land upon which the same stand, to the extent of the right, title and interest of such owner," &c.   (Act of July 11, 1851, chap. 513, page 953, § 1.)

1. The act nowhere defines what a lot shall be in extent. It may be bounded by three streets, like the Astor House or Metropolitan Hotel, and still be the lot on which the building stands; or, like the Cooper Institute, it may comprise a whole block.

2. Neither does the act define what the building shall be, in extent or interior divisions. It may be fifteen feet wide, or two hundred feet; or, like these buildings on 35th and 36th streets, seventy-five feet wide. There may be free passage throughout, as in the Metropolitan block; or, as in the present case, close interior walls may divide the area into separate dwellings.

3. And the right is to be " to the extent of the right, title and interest at that time" of the owner, no matter how great the value of the building and the land, no matter how small the value of the labor and materials.

The whole Academy of Music, with the area of land it covers, is subject to the demand of the marble cutter who puts up a mantel piece against the wall on 14th street; and not alone is a piece of the ground at that point, with the structure upon it, liable. And it makes no difference that some one afterwards purchases that piece of ground separately. He has constructive or actual notice—and this plaintiff had both—and he must govern himself accordingly. The law is not changed by the acts of the parties liable. The extent of land and building subject to lien is not reduced according to the measure of the necessity or the caprice under which the owner may have made partial sales.

4. And there is no hardship in this to subsequent purcha-

Paine *v.* Bonney.

sers, when it is remembered that they have ample opportunity to protect themselves. This plaintiff had such opportunity, and made up his mind to reject it, choosing to consider that the Colwell lien was invalid, and this within one year after it was filed.

SECOND POINT.—The 11th section of the act (p. 956) relates entirely to the manner and the various modes in which the lien " may be discharged." These are five in number: (1.) By a satisfaction piece duly executed. (2.) By deposit with the clerk of the money. (3.) By an entry of the clerk, made in the book of liens, after one year has elapsed since the filing of the claim, stating that no notice had been given to him of legal steps to enforce the lien. (4.) By affidavit of service of notice, &c., on the claimant, and the lapse of thirty days without an affidavit from the claimant being filed of proceedings commenced. (5.) By satisfaction on enforcement of lien. 1. It is not the mere lapse of one year after the filing of the claim, without notice to the clerk of legal proceedings, that discharges the lien ; but it is an entry of the clerk. And there is no provision that the mere want of such notice shall itself make void the lien. On the contrary, the notice under the 4th subdivision of section 11 may be given in the last week of the year, and the claimant is allowed thirty days to file his affidavit that he has commenced legal proceedings. 2. Quite different is the act in plainly requiring that the lien must be filed within six months after the labor and materials furnished, and that legal proceedings *must be* commenced within one year after the lien was filed. And the fact that the same requirement was not made by the act, as to giving notice to the clerk of the commencement of legal proceedings, shows it was not the intention of the legislature that the mere want of notice, whether entry was made by the clerk or not, should work a forfeiture.

THIRD POINT.—To direct the sheriff how to sell, all parties interested in the different lots ought to be before the court.

DALY, FIRST J.—From the state of facts agreed upon by

the parties, it appears that the defendant, Hardenbrook, was the owner of six lots of ground, lying together, three of which lots fronted upon 36th street, and the other three on 35th street, thus forming one parcel.

In August, 1855, Hardenbrook executed three mortgages upon each of the three lots on 35th street, to one Daniel Paine, to secure the payment of the sum of $6,000, which sum was due by Hardenbrook to the plaintiff, John Paine, but at the plaintiff's instance, and for his benefit, the three mortgages were executed to Daniel Paine.

On the 20th of December, in the same year, William H. Colwell filed a notice of lien for materials furnished for, and which were used by Hardenbrook in the erection of six dwelling houses upon the six lots; and on the 20th of March following, Colwell commenced an action in this court to foreclose his lien, but omitted to give notice to the county clerk that legal steps had been taken to foreclose the lien until more than a year had elapsed from the time of the filing of his claim.   He gave the notice after that time, and before the commencement of this action.

In August, 1856, Daniel Paine foreclosed his mortgages. The three dwelling houses and lots on 35th street were sold under the foreclosure, and the plaintiff, John Paine, became the purchaser.   Colwell was not made a party to the foreclosure suit; but the plaintiff, before he purchased, knew of the existence of Colwell's lien; and the plaintiff's attorney, who was also the attorney of Daniel Paine in the foreclosure suit, was particularly notified, on the day when the plaintiff completed his purchase, of Colwell's claim.   After the plaintiff purchased, other parties became interested, as owners, in two of the houses and lots; and the plaintiff, when this action was brought, was the owner of the easternmost one of the three.

On the 16th of February, 1857, Colwell recovered a judgment for $1,628 99, upon the foreclosure of his lien, and obtained a decree for the sale of all the right, title and interest which Hardenbrook had on the day when Colwell filed the

notice of lien, which judgment was assigned by Colwell, before the commencement of this action, to the defendant, Bonney.

One of the three houses and lots on 36th street was also sold upon the foreclosure of a mortgage ; and after satisfying the mortgage, there remained a surplus of $4,912 12, subject to other liens ; and upon a reference ordered to ascertain the amount and priority of such lien, Colwell's assignee, the defendant, Bonney, attended, and made no claim to the surplus, as assignee of Colwell's judgment, but claimed it under another lien, which was subsequent in point of time to that under Colwell's judgment, and which other lien absorbed the whole of the surplus.

The relief claimed in the present action is, that the judgment obtained by Colwell be vacated, upon the ground that he had no lien upon the three houses and lots in 35th street, having lost it by neglecting to give notice to the county clerk within a year after the filing of the claim that legal steps had been taken to enforce the lien ; or if that is denied, that a reference be ordered to ascertain what amount of the materials furnished by Colwell was used in the construction of the houses now owned by the plaintiff ; and upon the payment of the amount or value of the proportion of the materials so used, that a perpetual injunction be granted against the enforcement of the judgment obtained by Colwell against the house and lot now owned by the plaintiff.

When the plaintiff purchased the three houses and lots on 35th street, they were subject to Colwell's lien ; and if that lien ceased and was at an end by the omission, within a year, to notify the county clerk that proceedings had been instituted to enforce it, then the plaintiff, who had no notice of these proceedings, would be entitled to have the judgment of foreclosure vacated.

The statute declares that the lien shall continue " until the expiration of one year from the creation thereof, and until judgment rendered in any proceedings for the enforcement thereof ;" and that the lien, in one year from the filing of it, may be

discharged by an entry of the county clerk in the book of liens, " stating that no notice has been given to him of legal steps to enforce the lien." If no proceedings have been commenced within the year, then the lien ceases at the end of that time, and it is the duty of the county clerk to make the entry, that he has had no notice of proceedings to enforce it, which entry discharges the lien. But if proceedings have been commenced within the year, then the lien continues until the judgment, unless the clerk makes an entry of the want of notice after the year has elapsed, as the statute provides that it shall continue until judgment rendered in any proceeding for the enforcement of it. In this case proceedings were commenced in three months from the filing of the claim, though more than a year elapsed before notice of the proceedings were given to the clerk; but as no entry was ever made by him of the want of notice, the lien continued until the judgment, when the judgment, which was a judicial determination of the extent and validity of the lien, became itself a lien, relating back and having effect as an incumbrance, as of the day of the filing of the claim. It is not, therefore, the fact that a year has elapsed from the time of the filing of the claim, without notice to the clerk, that discharges the lien, but the entry by the clerk that operates and has that effect.

It is insisted, that if proceedings are commenced within the year, but no notice of them is given to the clerk, any one interested in the removal of the incumbrance is entitled, after the year has elapsed, to have the lien discharged by the entry of the clerk of the want of notice; and it is suggested that no such entry in the case could be obtained, as it is the practice of the clerk to refuse, in any case, to make it, without an affidavit from the owner that he has had no notice within the year, of proceedings to enforce the lien, which could not be obtained by the plaintiff, as such proceedings had been commenced, and the owner could make no such affidavit. That thus, though the failure to notify the clerk of the steps that had been taken to foreclose the lien, gave the plaintiff a right to have the entry made and the lien discharged, he was

deprived of the right in consequence of the practice adopted by the clerk. It does not appear that the clerk was ever requested to make such an entry, and if he had been, and had refused, unless such an affidavit was made by the owner, the proper remedy of the plaintiff, if he was entitled to the entry, was to compel the clerk, by *mandamus*, to make it.

But in a case where proceedings have been commenced within the year, I do not understand that a failure to notify the clerk entitles the owner, or any other person, as a matter of right, in all cases, to have such an entry made when the year has elapsed; and I think the practice adopted by the clerk of requiring an affidavit from the owner before he will make such an entry, is a very proper one.

The only object of this notice is, to prevent the clerk from making an entry, which he may do at the end of the year, discharging the lien upon the presumption, from the want of such notice, that no proceedings have been commenced. A lien expires in a year from the creation of it, unless proceedings are commenced to enforce it, but it remains a subsisting incumbrance upon the lien docket until an entry is made discharging it. It is presumed that no proceedings have been commenced, if the clerk has had no notice of any proceedings when a year has elapsed after the filing of the claim, and he is then at liberty to make the entry which will discharge it. The statute simply declares what may be the effect of want of notice by the clerk, and what he may do or shall do when a year has expired, if no notice has been given to him; but it has not prescribed how this notice is to be given—whether it may be given to him orally, or whether it must be in writing—whether it shall apprise him that notice has been served upon the owner, specifying the court in which, and the time when the owner was to appear and submit to an accounting and settlement, or whether it is sufficient to notify him simply in the words of the statute, that legal steps have been taken to enforce the lien. The sole purpose of the provision in respect to notice, or rather to the want of notice by the clerk, was simply, in my judgment, to point out a mode in which

the lien might be discharged from the docket in cases where neither claimant nor owner had taken any steps throughout the year during which the lien runs, to enforce it or bring it to a close. If this notice to the clerk was intended for any other purpose, if it was essential to the validity of the proceedings to enforce the lien, or designed to protect the rights of the owner, or any other party interested in the foreclosure of the lien, the statute, I think, would have been more explicit in pointing out how it was to be given, and would have indicated what it was to contain, with at least some degree of certainty, as has been done in respect to the notice which creates the lien, and the notice which is to be given for the enforcement of it. The whole design of this statute is to render the proceeding on the part of the mechanic or material man in imposing and enforcing his lien as simple as possible, and connected with as little detail as may be consistent with the due protection of the rights of the owner, or of other parties whose interests may be affected by the incumbrance created. The service of such a notice is not necessary for the owner, for the proceedings to enforce the lien are commenced by the service of a notice upon him personally; and as respects other parties standing in a position like that of the plaintiff, who has succeeded to the right of the owner in the premises, the notice cannot have been intended to apprise such parties of the proceedings to enforce, or bring the lien to a close, as no effect can arise from the want of notices to the clerk until a year after the filing of the claim; and during that time, that is, before the end of the year, the lien might be foreclosed, the judgment obtained and the property sold. Indeed, in the great majority of cases coming under our notice, the judgment is obtained before the year has elapsed, and entered, according to the ninth section of the statute, in the lien docket, with the county clerk, thus superseding the inchoate lien created by the filing of the claim, by a judgment which perfects the lien and fixes the amount or extent of it, under which the right and title of the owner, at the time of the filing of the claim, may be sold before the expiration of

the time for giving the notice to the clerk, and which judgment is itself notice to the clerk of the steps that have been taken to enforce the lien.

If the clerk has no notice, he has undoubtedly the right, after the year has elapsed, to make this entry, whether proceedings have been commenced or not; and if he makes it, the lien is discharged, as it was made upon a presumption warranted by the statute, that no proceedings had been commenced; but the practice of the clerk of requiring an affidavit from the owner, is a proper precautionary measure on his part, before making such an entry. A notice may have been actually given, and may have been lost or mislaid. The clerk may have neglected to file it, or to make any entry of the receipt of it. If a verbal notice suffices, (and the statute, as before remarked, has not indicated how it is to be given, or what notice will suffice,) the clerk may have forgotten it. Yet if he makes the entry, the lien is discharged. The right acquired by the claimant is gone by the ministerial act of the clerk; for, in such a case as I have put, I doubt if the court, or if any court could relieve the claimant from the effect of such an entry. If a court could, as between claimant and owner, relieve in such a case, upon the ground that sufficient notice had been given to the clerk, and that his entry was, therefore, improperly made under the statute, I feel very confident that it would not interfere as against the right of an innocent purchaser after such an entry, who had purchased upon the warrantable presumption that the lien was discharged in the manner provided by law. To guard against such consequences, therefore, extraordinary precaution on the part of the clerk is but a proper exercise of his official duty; and if, in the exercise of that duty, he becomes apprised of the fact that proceedings have been commenced, then he has notice that legal steps have been taken, and should not make the entry. My conclusions upon this branch of the case are, that the omission, during a year from the filing of the claim, to notify the clerk that legal steps had been taken, did not operate to discharge the lien; the only object or necessity of such a notice

in any case being to prevent the clerk from making the entry discharging the lien; that the inchoate lien created by the filing of the claim, no entry having been made by the clerk, continued after the year and until the judgment, which judgment became, and is now, a valid and subsisting incumbrance upon the premises; and the application to vacate the judgment upon the ground that the lien had ceased to exist when the judgment was rendered, is denied.

The next point in the case is, a demand for equitable relief, if the court should refuse to vacate the judgment upon the ground above stated. The plaintiff asks that the judgment, and all proceedings subsequent to the complaint, be set aside; or that the judgment may be so modified that he may be allowed to come in and defend, and show to what extent Colwell had a lien upon the house now owned by the plaintiff; that a reference be ordered, to ascertain what proportion of the materials furnished by Colwell for the six houses were used in the construction of the house now owned by the plaintiff; and that upon the payment by the plaintiff of the amount or value of such proportion, a perpetual injunction be granted against enforcing the judgment against the plaintiff's house and lot.

It is assumed, on the part of the plaintiff, that the lien of Colwell for the materials furnished by him towards the erection of the six houses, is divisible into a separate lien upon each house and lot, to the extent of the materials used in each house; that the lien given by the statute is upon a house or building, together with the appurtenances to such house or building, and the lot of land upon which the house or building stands; and though the materials were furnished by Colwell in pursuance of a contract for the erection of six houses, yet, as each house and lot is distinct in itself, and capable of being severed and sold separately, that it is the duty and within the power of the court to apportion the lien and distribute the burden equally upon each house and lot.

Where there is one incumbrance upon several parcels or

lots of land which have passed into the hands of different owners, a court of equity can, undoubtedly, upon the maxim *qui sentit commodum, sentire debet et onus*, so apportion the burden as that each shall bear his proper part in the discharge of the common obligation ; (*Rogers* v. *Mackenzie*, 4 Ves. 472 ; *Rorke's Case*, 5 Co. 100 a.; Stor. Eq. Jur. 484;) and it may be that this court, in a proper case, with the necessary parties before it, might so adjust its judgment upon the foreclosure of the lien as to equalize the burden among the separate owners of the different lots, so far as it could be done consistently with the due enforcement of the rights of the claimant. But I do not deem it necessary to consider that question, as I am clear that the plaintiff has established no case entitling him to the special relief, if the court was in a position to administer it. He purchased the three houses and lots on 35th street at the mortgage sale, with a full knowledge of the existence of Colwell's lien. He knew, when he purchased, that they were subject to the payment of that lien, or to the payment of any judgment that Colwell might obtain upon the foreclosure of it. He bought at the mortgage sale in October, but did not complete his purchase until the 18th of November, 1856 ; so that there can be no pretence that he relied upon the invalidity of the lien upon the ground already considered—the want of notice to the clerk of proceedings to enforce it—as a year from the filing of the claim did not elapse until the 20th of December following. Before he became the owner of the three lots, therefore, he knew that Colwell had filed his claim, and it is immaterial whether he knew or not that he had then commenced proceedings to enforce it, as he knew that it was a subsisting incumbrance upon the three houses and lots, and he bought them subject to Colwell's right to foreclose it, and obtain whatever judgment he might in law be entitled to. Having become the owner of the three lots under such circumstances, he has since parted with his ownership in two of them to other parties, who do not unite with him in a common application to the equitable powers of the

court, nor does he make them parties to the suit, but asks, simply on his own behalf, that his house and lot, upon the payment of the value of the materials used in it, may be released from the effect of Colwell's judgment. For all that we know, he may have sold to these parties without advising them that the lots were subject to the judgment, and be thus bound in equity to bear the whole burden himself. But, without pursuing this point, there is a more complete answer to his application.

The mortgage under which these three lots were sold, though nominally in the name of Daniel Paine, was for the plaintiff's benefit. It was executed to secure a debt due to the plaintiff by Hardenbrook, the mortgagor; and the foreclosure of it, unless the contrary is shown, must be regarded as his act. The attorney of the plaintiff in this action was the attorney in the foreclosure suit, and both he and the plaintiff were advised, before the plaintiff completed his purchase, of Colwell's claim. Colwell might have been made a party to that suit; and if he had been, he would have been entitled, as a subsequent incumbrancer, to the benefit of any surplus that might have remained of the purchase money, after the payment of the mortgage debt. It is not averred that the three houses and lots sold for no more than enough to pay the mortgage debt, which was but $6,000, or that there were prior incumbrances sufficient to absorb the whole of the purchase money. If such were the fact, it was incumbent upon the plaintiff, in an action addressed to the equitable consideration of the court, to have set it forth; and if there is any presumption arising from his omission to do so, it is that the fact was otherwise. We do not know but that there was an ample fund arising from an excess of the purchase money over the mortgage debt and expenses of foreclosure and sale, out of which the claim of Colwell might have been paid; and if there was, it may have gone, through the plaintiff's instrumentality, for all that we know, to Hardenbrook. From the case it appears that Colwell was left to go on and perfect his judgment, which is the only security that he, or rather his assignee, now has; and

the court will not impair that security by limiting the operation of the judgment to any particular part of the premises to which the lien attached, or by exempting, upon any terms or conditions, any part from the operation of that judgment, unless upon a state of facts establishing a better ground for equitable relief than has been shown on the part of the plaintiff.

The presumed equities in favor of the plaintiff, as between him and the assignee, Bonney, arising out of Bonney's absorbing the surplus remaining after satisfying the mortgage on the house and lot upon 36th street, by having it applied in payment of a lien in his favor, which was subsequent in point of time to the lien of Colwell's judgment, of which Bonney was the assignee, is not presented in the points submitted to me, and I do not know if the plaintiff wishes the court to consider it. If he does, it may be disposed of very simply. If the lien of Bonney, which absorbed the surplus arising upon the sale of the house and lot in 36th street, was limited to that house and lot, then the surplus fund arising from the sale of it constituted the sole security for the payment of that lien; and if that surplus had been applied to the extinguishment of the lien arising upon the Colwell judgment, which was more extensively secured upon the six lots, it would have been to the prejudice and partial loss of a lien secured but upon one lot. This, I think, Bonney was not bound to do, because the lien upon the Colwell judgment was prior in point of time. If both liens were limited to the same piece of ground, it might be incumbent upon Bonney to apply the surplus from the sale, first, in payment of the lien prior in point of time; at least, if the rights of other parties might be prejudiced by applying it first to the payment of a subsequent lien. But if a creditor holds two securities, one of which is secured upon several parcels of land, and the other is secured but upon one of them, and the latter is sold, I think he has the right to apply the proceeds from that sale towards the extinguishment of the lien which is secured upon that parcel alone, though the other security

may have been created before it. It does not appear here but that such was the fact, or at least the facts stated do not show that the plaintiff has any equity as against Bonney, arising out of that transaction.

I shall give judgment for the defendants.

Judgment entered for the defendants.